United States District Court for the
Western District of New York
_____

United States of America

                Prosecution.                Case No. 1:20-cr-00180-LJV-JJM

                                          REPLY TO THE GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR BAIL MODIFICATION AND AFFIRMATION IN OPPOSITION TO THE GOVERNMENT'S CROSS-MOTION FOR REVOCATION OF RELEASE

        -vs-

Samuel Mara

                Defendant.
_____

MATTHEW ALBERT, duly affirms, under penalty of perjury, that:

1. I am an attorney duly admitted to practice law in the Courts of the State of New York and in the United States District Court for the Western District of New York.

2. I represent the defendant, Samuel Mara ("Defendant"), in the above-captioned matter.

3. This Affirmation is made upon information and belief, based on my interviews of Mr. Mara, and my review of our file, and the various and sundry pleadings and papers that have been filed in this case.

## CASE HISTORY

4. Samuel Mara was arrested and taken into custody on or about August 11, 2020 based upon a one count complaint filed by Federal Bureau of Investigation Special Agent Jason Galle. The complaint alleged Mr. Mara knowingly, willfully, and unlawfully, transmitted threatening communications in interstate commerce, in violation of Title 18, United States Code (U.S.C), Section 875(c).

5. On August 18, 2020, subsequent to a several day detention hearing, the Honorable Magistrate Jeremiah McCarthy released Mr. Mara under a multitude of conditions to the

custody of his mother, Pauleen Mara, who signed a $25,000 signatory bond on her son's behalf (Dkt. 19, 20).

6. As the Court is aware, Mr. Mara was indicted by way of a Western District Grand Jury relative to the above-referenced alleged conduct on or about November 18, 2020 (Dkt. 22). At his arraignment, conducted virtually, Mr. Mara moved to modify the conditions of his release by way of adding a curfew so that he could work and volunteer with animals. To this point, Mr. Mara has only been allowed outside of his house to attend to his health, counseling, and legal appointments.

7. Mr. Mara then filed a Bail Application Motion on his behalf, on November 25, 2020 (Dkt. 31).

8. Thereafter, the Government filed a Response to Mr. Mara's Bail Application Motion, combined with a Cross-Motion to Revoke Mr. Mara's release (Dkt. 33).

9. This Affirmation is submitted in Reply to the Government's Response and in Opposition to the Government's Cross-Motion.

## ARGUMENT

DEFENDANT HAS ESTABLISHED A THRESHOLD BASIS TO MODIFY THE
CONDITIONS OF HIS RELEASE

10. When a criminal defendant is released under pre-trial release, they must be "subject to the least restrictive further condition, or combination of conditions, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B).

11. Moreover, a defendant has the right to file, with a court of original jurisdiction, a motion to amend the conditions of his release. 18 U.S.C. § 3145(a)(2).

12. In order to justify a modification of the conditions of release, a defendant must "establish that new information exists that was not known to him or her at the time of the initial detention hearing, and that this new information is material to his or her release conditions regarding flight or dangerousness." *United v. Lopez,* Case No. 2:16-cr-00265-GMN-CWH (D. Nevada 2019); *United States v. Wei Seng Phua,* No. 2:14-cr-00249-APG, 2015 WL 127715, at *1 (D. Nev. Jan. 8, 2015); *see* 18 U.S.C. § 3142(f).

13. Mr. Mara has done so in his pending Bail Application Motion.

14. Mr. Mara has been diligently engaged in mental health treatment. This treatment post-dates the alleged incidents, cited by the Government in their Cross-Motion, in August and September of 2020, where Mr. Mara allegedly made comments about various persons connected to the pending criminal charges on social media (*infra*) (see Government's Cross-Motion, pp. 13-15, Dkt. 33). Such treatment has allowed Mr. Mara the opportunity to find proper coping mechanisms relative to the injustices that incited his pain and anguish over the summertime of 2020. In a short time, Mr. Mara has developed a maturity that was not as readily apparent over the course of last summer. Proof of the same is attached hereto as Exhibit A in the form of Mr. Mara's updated treatment reports from Horizon Human Services and Catholic Charities.

15. Mr. Mara's improved mental health and more positive outlook on life is not something that could have been known to him upon his arrest.

16. Mr. Mara also desires to perform volunteer work with animals so as to channel his efforts for a more humane and just society in a more constructive manner.

17. Indeed, Mr. Mara's desire to become a productive member of society is further evinced by the fact that, subsequent to his release on the pending charges, he started his own t-

shirt company, titled "Kings & Queens" (see Mr. Mara's proof of self-employment, annexed hereto as Exhibit B). He is now channeling his activism and his social media savvy in a more entrepreneurial and less volatile manner.

18. In addition, Mr. Mara would like to also secure employment as a driver for Uber and/or Lyft.

19. Based on the above factors, Mr. Mara has established new information to a warrant a reduction in the severity of the conditions of his release. His complete lack of criminal history to this point in addition to his now tempered conduct and demeanor point to only one logical conclusion.

20. Mr. Mara is a peaceful man who has never hurt a fly, and that is meant in a literal context. Mr. Mara's love of animals is exhibited by his veganism… he doesn't eat meat and respects all life… he literally doesn't hurt a fly.

21. At worst, Mr. Mara, disturbed by the centuries of racial injustice perpetuated against black men such as himself, engaged in heated, yet **peaceful** protest and inflammatory rhetoric during a highly tumultuous time.

22. While the Government finds Mr. Mara's words relative to his purported threat against Mayor Byron Brown to be "chilling," they intentionally overlook the context with which they were made, and the fact that it is not Mr. Mara who was violent towards the Government… it was the Government who was violent towards Mr. Mara.

23. Mr. Mara and many of his friends were being shot with rubber bullets and other weaponry used in war. Mr. Mara was shot at in an indiscriminate display of Governmental force. He was pepper sprayed. Proof of both Mr. Mara being attacked along with egregious acts of brutality lodged against other like minded protestors is

attached hereto as Exhibit C in the form of a notarized statement by Bobby Morgan, a good Samaritan who rendered aid to Mr. Mara on or about June 1, 2020.

24. The Government, consistent with the current Federal administration, clearly tacitly condones such acts of actual violence against protestors as evinced by their failure to charge any of the individuals shooting such bullets at Mr. Mara… but instead focused on men like Mr. Mara for engaging in heated rhetoric relative to such brutality.

25. In fact, the United States Attorney essentially directed law enforcement to go after and make examples of men like Mara who stridently spoke out against social injustice… and essentially gave tacit consent to law enforcement to use heavy handed tactics against Mr. Mara. Proof of such fact is attached hereto as Exhibit D in the form of the United States Attorney's directive to men such as opposing counsel to apprehend and go after "domestic terrorists," such as Mara.

26. As such, Mr. Mara's words certainly become less inflammatory under the above context.

27. The Government intentionally omits a key word when reciting Mr. Mara's speech to the Court.
    "Listen…what they're gonna do is, they're gonna drive themselves crazy outta' all the overwhelming fear and one of them is (inaudible) gonna hurt us or kill us and that's gonna start **(inaudible)** and then we gonna do whatever the fuck we want. It will happen, we are in power. They are scared. *They will act off impulse and they will try to kill us, when they do that. Then they will all die. We will kill them all. I will personally kill [individual known to law enforcement as B.B.]."*

28. The inaudible, as cited above, is not inaudible at all. The word Mr. Mara used was "war."

29. While to much of the citizenry, the idea of the Government waging war against its' citizenry may sound unlikely, the same could not be said to black men and women, including Mr. Mara who congregated regularly over the summer to protest racial injustice.

30. To them, both in Buffalo and across the country, a war could have been waged against them. https://time.com/5894356/protesters-injured-police.

31. As such, Mr. Mara's speech was not an actual unconditional threat to Mayor Brown… just a promise to use self defense IF war was waged and IF they (presumably the government) were to try and kill them. Assuming those things don't happen… and they didn't, the inference would be that Mr. Mara wouldn't kill anyone… and of course he didn't.

32. The Right to Freedom of Speech, as mandated by the Constitution, is so paramount, that only "true threats" are devoid of First Amendment protection. Seemingly threatening statements that are "**conditional**", are not "true threats." Rather, they are expressions of free speech protected by the First Amendment. *United States v. Francis,* 164 F. 3d 120, 121-123 (2d Circ. 1999).

33. Furthermore, apparently threatening speech only constitutes a "true threat" if "the threat on its face and in the circumstances in which it is made is so unequivocal, **unconditional**, immediate and specific as to the person threatened, as to convey a gravity of purpose and imminent prospect of execution…" *United States v. Kelner,* 534 F. 2d, 1020,1027 (2d Circ. 1975).

34. In *Kelner*, the Second Circuit upheld the criminal conviction of an individual who held a press conference, while dressed in military fatigues and in possession of a firearm. During said press conference, he expressed a clear and unequivocal plan to assassinate Yasser Arafat and the latter's "lieutenants." The defendant further stated that his people were already actively searching for Arafat in an attempt to kill him. The Court determined that this unequivocal, immediate plan to harm a specified individual

constituted a "true threat." *United States v. Kelner,* 534 F. 2d, 1020-1021, 1027 (2d Circ. 1975).

35. Such a ruling is clearly distinguished in *Watt v. United States*, which is most akin to the current matter. Watts stated, to a crowd of fellow protestors at a political rally, that if he was ever drafted, he would put the President in the line of his gunsight (thereby implying he would shoot him). Specifically, the defendant said that, "If they ever make me carry a rifle, the first man I want to get in my sights is L. B. J…They are not going to make me kill my black brothers." As a result, the defendant was charged with, and convicted of, the more serious offense of violating 18 U.S.C. Sec. 87 (knowingly and willfully making a threat against the President of the United States). The High Court reversed the defendant's conviction, on the grounds that his speech constituted "political hyperbole" rather than a threat to the President. *Watt v. United States,* 394 U.S. 705, 705-708 (1969).

36. Mr. Mara's expressions towards Byron Brown is even more conditional than that of Watts…he states, in sum and substance, that he would defend himself IF war was waged against Black Lives Matter protestors.

37. The Government is essentially trying to imprison a black man who was fighting against racism for saying if law enforcement would try and kill him, he would engage in self defense.

38. Based on such commentary, the Government is portraying Mr. Mara as a man of uncontrollable violence that they must put behind bars during a global pandemic, where COVID is running rampant amongst the jail, so as to keep the community safe.

39. It is not Mr. Mara's conduct that is chilling in this instance… it is the Government's thinly veiled and vicious attack at the Black Lives Matter movement and their right to

seek changes to the racial injustices that have pervaded this country since its' inception. It is not the community who needs to be kept safe from Mr. Mara… it is Mr. Mara who needs to be protected and kept safe from the Government.

## DEFENDANT DID NOT VIOLATE THE CONDITIONS OF THE ORDER OF RELEASE

40. Contrary to the Government's assertions, Mr. Mara did not violate the conditions of his release, when he allegedly made comments about various persons connected to the pending criminal charges on social media, in August and September of 2020 (*supra* and *infra*).

41. Clause 8(l) of the Order Setting Conditions of Release, filed on August 18, 2020 (Dkt. 19), directs Defendant to "Avoid all contact, directly or indirectly, **with any persons who are or who may become a victim or potential witness** in the subject investigation or prosecution [emphasis added]…"

42. This clause does **not** specify any of the actual or potential victims or witnesses referred to. Indeed, after his release, Defendant met with Probation Officer Melissa Linton, who advised him that, per the Order Setting Conditions of Release, he was specifically ordered to refrain from contacting Mayor Byron Brown. She did not advise him that he was required to refrain from contacting anyone else.

43. Moreover, and just as the Government's case rests on a clear distortion of the term "actual threat," their argument to modify Mr. Mara's bail rests on an even more blatant misuse of the term, "contact."

44. The Government argues that, by allegedly posting comments **about** potential witnesses on his own personal platform, in August and September of 2020, Mr. Mara violated the conditions of his release by **contacting** said witness, allegedly in violation of Clause 8(l)(*supra* and *infra*).

45. The Government misreads the plain text of Clause 8(l) of the Order Setting Conditions of Release by this assertion. Also and incidentally, with such documents under seal, Mr. Mara and counsel have no opportunity to see such documents to determine their authenticity. The Government seeks to take away Mr. Mara's freedom… but without giving him the chance to even see the documents they are using to try and take such freedom from him.

46. Regardless though and at worst, Mr. Mara was only communicating **about**, rather than **to**, someone the Government is now saying is a potential witnesses. By the Government's logic, if Mr. Mara were to say to his own mother in the confines of his own home, "Mayor Brown is a bad Mayor," he would be contacting Mayor Brown. The Government can cite to no case where posting about someone was considered contacting such person, and indeed there is no such case that exists in either state or central law.

47. While Mr. Mara's own musings on his own medium, made prior to getting needed mental health treatment, may have been misguided… they did NOT violate Clause 8(l) of the Order Setting Conditions of Release.

48. Furthermore, Mr. Mara voluntarily deleted all of his social media accounts as of December 2, 2020. Such decision reflects the growth and maturity Mr. Mara has made in the time frame since he has been arrested.

## CLAUSE 8(l) OF THE ORDER OF RELEASE IS UNCONSTITUTIONALLY VAGUE AND OVERBROAD

49. Even if the Court were to somehow conclude that Mr. Mara violated Clause 8(l) of the Order Setting Conditions of Release, the Court should not hold this against Defendant, as the Clause itself is unconstitutionally vague and overbroad.

50. The text of Clause 8(l) does not specify which, if any, victims or witnesses Defendant is to refrain from contacting. Rather, it directs Defendant to "Avoid all contact, directly or indirectly, **with any persons who are or who may become a victim or potential witness** in the subject investigation or prosecution [emphasis added]…"

51. This clause does **not** specify any of the actual or potential victims or witnesses referred to. Indeed, after his release, Defendant met with Probation Officer Melissa Linton, who advised him that, per the Order Setting Conditions of Release, he was specifically ordered to refrain from contacting Mayor Byron Brown. She did not advise him that he was required to refrain from contacting anyone else.

52. There is no way Mr. Mara (or indeed, any other defendant in his shoes) could possibly identify, in advance, who all the actual or potential victims or witnesses would be, and proactively refrain from contacting them.

53. Especially given that these alleged "crimes," happened in the amorphous realm of the internet, one can make an argument that *anyone* who viewed Mr. Mara on social media or protesting during the course of the last summer would constitute a potential witness.

54. It is unfair to expect Mr. Mara, a novice to the criminal justice system who has mental health issues, to know who all potential witnesses would be against him for crimes that allegedly occurred in cyberworld. If the Government wanted Mr. Mara from contacting…

or speaking about…specific individuals, they could have set forth specific names and Mr. Mara would have complied with such a directive.

55. That being said and out of an abundance of caution, it should be reiterated both that Mr. Mara deleted all social media sites of his and that he will no longer even talk *about* any of the Government's potential witnesses.

## **CONCLUSION**

56. Based on the foregoing, there is no basis to revoke Mr. Mara's release. Moreover, modifying his Conditions of Release, so that he may be released either under recognizance bail or under Probation Supervision with a curfew in place, is appropriate under the circumstances.

WHEREFORE, Mr. Mara prays that this Court issue Orders granting him the relief requested in his Bail Application Motion, deny the relief requested in the Government's Cross-Motion, and such other and further relief as the Court may deem just and proper.

Dated: December 4, 2020

Respectfully submitted,

*/s/ Matthew Albert*

———————————————
The Law Offices of Matthew Albert Esq.
*Attorneys for Samuel Mara*
2166 Church Rd
Darien Center, NY 14040
Ph: 716-445-4119
Email: mattalbertlaw@gmail.com